```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                -against-                                   :      13 Crim. 8 (JPO)
                                                            :
HERMAN AVERY GUNDY,                                         :      OPINION AND ORDER
                                       Defendant.           :
                                                            :
-------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

Defendant Herman Avery Gundy was charged with one count of failing to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA"), 18 U.S.C. § 2250. On May 22, 2013, this Court granted Gundy's motion to dismiss the indictment, holding that Gundy was not subject to SORNA's registration requirements at the time of the interstate travel alleged by the Government. *United States v. Gundy*, No. 13 Crim. 8, 2013 WL 2247147 (S.D.N.Y. May 22, 2013) ("the Opinion"). Advancing new arguments, the Government now seeks reconsideration of the Opinion. Though responsive to some of the concerns addressed in the Opinion, these arguments do not succeed. For the reasons that follow, the motion for reconsideration is denied.

I.   **Legal Standard**

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Group, Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotation marks and citation omitted). Accordingly, "[t]he threshold for prevailing on a motion for reconsideration is high." *Nakshin v. Holder*, 360 F. App'x 192, 193 (2d Cir. 2010); *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting such a motion is strict."). "Although the federal

1

and local rules of criminal procedure do not specifically provide for motions for reconsideration, courts in this district have applied Local Civil Rule 6.3 in criminal cases." *United States v. Peterson*, No. 12 Crim. 409, 2012 WL 5177526, at *1 (S.D.N.Y. Oct. 19, 2012).

## II.     Discussion[1]

The Supreme Court has held that a person commits a violation of § 2250 only if he (1) is "required to register under [SORNA]"; (2) *subsequently* "travels in interstate or foreign commerce"; and (3) *subsequently* "knowingly fails to register . . . ." 18 U.S.C. § 2250; *see Gundy*, 2013 WL 2247147, at *3 (citing *Carr v. United States*, 560 U.S. 438 (2010)).  In the Opinion, this Court concluded that the first element was not met until *after* Gundy traveled in interstate commerce.  This is because, as the Court explained: (1) Gundy's duty to "initially register" under 18 U.S.C. § 16913 arose just before completion of "a sentence of imprisonment with respect to the offense giving rise to the registration requirement"; (2) Gundy's federal sentence for violation of supervised release ("VOSR") based on his Maryland conviction— which immediately followed his sentence on the Maryland conviction itself—was "a sentence of imprisonment with respect to the offense giving rise to the registration requirement" (namely, the Maryland sex offense); and (3) Gundy did not complete that federal sentence until *after* he traveled in interstate commerce.  *See Gundy*, 2013 WL 2247147, at *4-13.

### A.

The Government's request for reconsideration opens with an argument that it did not advance in its original brief, at oral argument, or in its post-argument brief.  This argument focuses on the third word of 18 U.S.C. § 16913(b)(1): "before completing *a* sentence of

---

[1] Familiarity with the Opinion and all other facts relevant to the case is presumed.

imprisonment with respect to the offense giving rise to the registration requirement." (emphasis added). In the Government's view, that single word controls this case: Because the sentence for his Maryland conviction was "a sentence of imprisonment," and because the statute refers to "a" sentence rather than "any" or "all" sentences, Gundy's duty to register attached on or before November 30, 2010—the date on which he completed the sentence for his Maryland conviction and thus, by implication, the date before which he was required to initially register. *See* § 16913 (b)(1). This is so, the Government argues, because he literally completed "*a* sentence of imprisonment with respect to the [sex] offense" on that date—even though he was not released and was immediately transferred to federal custody to begin serving *another* "sentence of imprisonment with respect to the [sex] offense."

This argument, although presenting a stronger textual basis for the Government's position than its previous arguments, must be rejected for several reasons.

*First*, motions for reconsideration are not the appropriate mechanism for advancing purportedly dispositive arguments for the first time. As the Second Circuit has emphasized, "[g]enerally, motions for reconsideration are not granted unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Cioce v. County of Westchester*, 128 F. App'x 181, 185 (2d Cir. 2005). Accordingly, "a party may not advance new facts, issues, or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (citation omitted). "Simply put, courts do not tolerate such efforts to obtain a second bite at the apple." *Goonan v. Fed. Reserve Bank of New York*, No. 12 Civ. 3859, 2013 WL 1386933, at *2 (S.D.N.Y. Apr. 5,

2013).  By waiting until this late stage in the case, and failing to identify any new decision or data in support of its plain language interpretation, the Government has waived this argument.

*Second*, even on its own terms, the Government's argument does not rid § 16913(b)(1) of the ambiguity that required invocation of statutory purpose and the rule of lenity.

"As in any statutory construction case," analysis begins with the statutory text and "proceed[s] from the understanding that [u]nless otherwise defined, statutory terms are generally interpreted in accordance with their ordinary meaning."  *Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013) (internal quotation marks and citations omitted).  "The meaning of a word [or phrase] cannot be determined in isolation, but must be drawn from the context in which it is used.'" *United States v. Torres*, 703 F.3d 194, 199 (2d Cir. 2012) (quoting *In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 155 (2d Cir. 2011)); *see also* Antonin Scalia & Bryan A. Garner, *Reading Law* 168 (2012) (noting that "statutory construction is a holistic endeavor").  "If the text of a statute [remains] ambiguous, then [the Court] must construct an interpretation consistent with the primary purpose of the statute."  *United States v. Ripa*, 323 F.3d 73, 81 (2d Cir. 2003).

Section 16913(b) provides that a sex offender shall initially register "before completing a sentence of imprisonment . . . ."  While the Government sees perfect clarity in this sentence, § 16913(b)(1) remains ambiguous in a crucial respect: by using the indefinite article to modify "sentence of imprisonment," Congress failed to distinguish between "any" and "a single."  This distinction makes all the difference to Gundy.

As a matter of plain language, the Government's reading is certainly a legitimate one.  Consider the sentence:  "You must apply for kindergarten before completing a year of preschool."  It is fairly obvious from the context of the sentence that "*a* year of preschool" is intended to mean "*a single* year of preschool."  But consider the following directive from a

doctor: "You must take one of these pills before finishing a meal" (or "Take one pill with a meal"). This is probably better read as meaning "before finishing *any* meal" (or "with *any* meal"). And consider the sentence: "You must stay out of the swimming pool until 15 minutes after eating a candy bar." Given the context, the better reading of this sentence is that it refers to *any* candy bar—and that if someone ate three candy bars consecutively, the 15-minute moratorium would be triggered by the eating of the *third* candy bar.

The meaning of "a" thus depends on context. *See, e.g.*, *Hagen v. Nodak Mutual Insurance Co.*, No. 99 Civ. 3562, 2000 WL 35528125 (D.N.D. May 8, 2000) ("As a general principle the use of an indefinite article may create an inherent ambiguity, depending on how the indefinite nature of the article is interpreted."). Although statutory context can eliminate ambiguity, *see S.E.C. v. KPMG LLP*, 412 F. Supp. 2d 349, 388 (S.D.N.Y. 2006), nothing else in § 16913(b) settles the choice between these two meanings of "a." While Gundy had completed "a single" sentence of imprisonment when time expired on the sentence for his Maryland conviction, SORNA can also be read to impose a duty to register before completing "any" sentence of imprisonment. In the latter case, the most natural reading (or at least a possible reading) of § 16913(b) is one that requires a defendant like Gundy—sentenced to multiple, consecutive terms of imprisonment "with respect to" the offense giving rise to the registration duty—to register before completing his final sentence of imprisonment.[2] Given this ambiguity in the statutory text, the Court must consult statutory purpose and the rule of lenity. As

---

[2] As noted in the Opinion, the Guidelines promulgated by the Attorney General lend support to this reading. They state that "SORNA's registration requirements generally come into play *when sex offenders are released from imprisonment*, or when they are sentenced if the sentence does not involve imprisonment." *Gundy*, 2013 WL 2247147, at *9 (quoting 73 Fed. Reg. 38,030, 38,045) (emphasis added).

5

explained in the Opinion, these factors cut strongly in Gundy's favor. *See* 2013 WL 2247147, at *8-12.

*Third*, the structure of the statutory text provides a simpler explanation for the statute's use of the word "a"—one that weakens the Government's textual argument.

The discussion thus far has assumed that the Government correctly framed the relevant question by focusing narrowly on § 16913(b)(1). It is a basic rule of interpretation, however, that each sub-section of a statute must be read in the context of the larger statutory structure. As its title indicates, § 16913(b) is concerned with the timing of initial registration. To that end, § 16913(b) contemplates two classes of offenders: those who have been sentenced to imprisonment, § 16913(b)(1), and those who received non-carceral sentences, § 16913(b)(2). When Congress referred to offenders who have completed "a sentence of imprisonment," it did so only to distinguish offenders who received "a sentence *of imprisonment*" from offenders who were "*not* sentenced to a term of imprisonment." (emphasis added). This perspective clarifies why Congress used the indefinite article in § 16913(b)(1): it was not concerned with (or apparently aware of any need for) specifying *which* sentence of imprisonment triggers the duty of initial registration, but rather with separating those offenders who have received a carceral sentence from those who have received a non-carceral sentence. Use of the indefinite article to describe these classes makes sense, whereas it would have been strange for Congress to use the indefinite article as its method of indicating when in time a duty of initial registration attaches. As a result, it would be erroneous to require "a" to bear all the weight the Government places on it. In statutory context, the word "a" simply does not bear on the question whether Gundy's initial registration duty attached at the end of his Maryland sentence. Accordingly, the Government's first textual argument does not succeed.

B.

The Government's second argument for reconsideration focuses on "with respect to."  In sum, the Government notes that "offense" is used throughout SORNA to refer to the crime of conviction resulting in a defendant's registration obligation—in this case, Gundy's Maryland sex crime.  Emphasizing that a violation of supervised release is distinct from any underlying state offense, and that Gundy's VOSR sentence punished his "breach of trust," the Government argues that the two convictions cannot be said to be "with respect to" one another.

The Court has already addressed and rejected an essentially identical version of this argument.  *See Gundy*, 2013 WL 2247147, at *7-8.  The Government is mistaken in its suggestion that the Opinion treated the VOSR sentence as part of, or as an extension of, the Maryland sentence.  *See id.* at *7-8, *11; *see also id.* at *11 n.2 ("The Government raises the specter of a constitutional concern with this conclusion, since postrevocation penalties relate to the initial offense—and would raise an issue of double jeopardy if they were treated as punishment for the new criminal offense.  *See Johnson v. United States*, 529 U.S. 694, 700 (2000).  But that concern is misplaced.  Acknowledging that Gundy's sentence for violation of his supervised release is a sentence 'with respect to' his Maryland criminal offense is not the same as concluding that it constitutes punishment for that offense.  In other words, the Court can recognize the reality of a relationship between Gundy's conduct in Maryland and his post-revocation penalties without implicating the double jeopardy issue noted in *Johnson*.  As a result, there is no need to construe 'with respect to' in the shadow of constitutional avoidance.").  As the Court noted in the Opinion, the phrase "with respect to" connotes relationships other than identity.  *Id.* at *8.  Here, "the violation that caused [Gundy's] [VOSR] sentence consisted of

exactly the same conduct that gives rise to his registration requirement." *Id*. Further, that conduct constituted a violation of the terms of Gundy's supervised release only because it was, in fact, prohibited by the criminal law—and the terms of Gundy's supervised release were keyed, in part, to compliance with that body of law. At the very least, SORNA's text is ambiguous as to whether his VOSR offense was an offense "with respect to" his Maryland conviction.

### C.

The Government also argues that treating Gundy as having been "required to register" no later than November 30, 2010 is consistent with SORNA's purpose. The Court considered and rejected similar purpose-related arguments in the Opinion, concluding that SORNA's purpose— as expressed in Second Circuit and Supreme Court precedent, the statutory text, and the Attorney General's implementing regulations—cuts firmly in Gundy's favor. *See id.* at *8-12. The Government advances only one novel argument: given that SORNA requires offenders to register in the jurisdiction of their conviction, and that SORNA aims to ensure that authorities do not lose track of sex offenders, it would be consistent with SORNA's purpose to prefer a rule whereby sex offenders register while incarcerated in the jurisdiction of their offense.

Even to the extent that this argument clarifies an aspect of SORNA, the core purposes and operation of the statute, as described in the Opinion, override this single factor. *See id.* at *9 ("Given that there is virtually no risk that a sex offender will fall through the cracks or go missing while incarcerated, it would make little sense to apply SORNA's registration requirements and criminal provisions to incarcerated individuals. In fact, Congress recognized that the public is adequately protected against sex offenders locked behind bars: this is why sex offenders are not required under § 16913(b) to initially register until the *end* of their post-

conviction carceral sentences."); *id.* at *10 ("A clear focus on offenders outside of custody runs through SORNA's text and its implementing regulations."). So do the weighty considerations of fairness and federalism—unaddressed in the Government's brief—that the Opinion highlighted as critical to any understanding of SORNA. *See id.* at *10 ("Inmates are regularly moved between jurisdictions while in custody. Often, these transfers are orchestrated without their consent. Even if those inmates enjoyed an affirmative defense under § 2250(b) to liability under § 2250(a) for failure to register while imprisoned, the result would [be] that a significant number of inmates have already satisfied elements (1) and (2) of § 2250 the moment they step past prison gates on their way to freedom. Failure to register within a short period would then perfect the § 2250 offense and return them to federal prison for an offense that, in the usual course, would implicate only the requirements of state sex offender registration schemes."); *id.* at *11 ("The Government's proposed interpretation of SORNA would [] result in a disruption of the state-federal balance contemplated by Congress, as it would federalize a large swath of post-custody failure-to-register offenses that do not reflect any uniquely federal power or concern . . . . Moreover, this disruption in federalism would arise in a context shot through with questions of fundamental fairness, since in many cases the predicate act of interstate travel would have been imposed on an unwilling sex offender—who might well be excused from recognizing that failure to register in his new state violates SORNA, instead of state law.").

In any event, the Government's arguments rest on questionable assumptions. It is not clear, for instance, why an offender's jurisdiction of conviction is "uniquely situated to know whether the offender has been convicted of a sex offense." When inmates are transferred within jurisdiction or to new jurisdictions, there is every reason to believe that information about their offense and post-conviction requirements travels with them. Every facility to which Gundy was

9

transferred, for example, was well aware of his status as a sex offender—and the Government offers no concrete evidence for its suggestion that prison officials have a difficult time tracking sex offender status.[3] Further, if an inmate were transferred from state to state—or from facility to facility—after initially registering, he would still have to register at each new location to ensure that the jurisdiction of conviction did not lose track of him. As a result, the reading of SORNA advanced by the Government still involves a series of registrations as inmates are moved from prison to prison—and thus presupposes the adequacy of registration schemes across facilities as prisoners are moved from one to the next. While initial registration may be unique in some respects, the Government has not explained how and why that uniqueness compels a rule that imposes a duty of initial registration at the end of the first prison sentence with respect to the offense giving rise to the registration duty. More broadly, the Government has not identified any reason for concluding that the view of SORNA set forth in the Opinion would thwart full realization of SORNA's purpose. Accordingly, the Government's purpose-based arguments do not warrant reconsideration of the Court's decision.

D.

In his motion to dismiss the indictment, Gundy presented several additional arguments for dismissal of the indictment which the Court did not reach, including (1) that SORNA violates

---

[3] There is little record evidence addressed to the question of why Gundy did not register as a sex offender when he completed his Maryland sentence—or to the question of why Maryland State officials, who the Government insists are in the best position to handle such matters, failed to ensure Gundy's registration. But the record is replete with evidence that federal officials *were* aware of Gundy's status as a sex offender and *did* remind him of his duty to register. The facts of this case thus suggest that, in at least some instances, officials in the jurisdiction of conviction will be less capable than officials in a jurisdiction to which an inmate is transferred of ensuring that the inmate complies with SORNA's registration requirements.

the Commerce Clause and (2) that Gundy cannot lawfully be found to have "traveled in interstate commerce" for purposes of criminal liability because he was "in custody" at the time of his interstate travel.  In light of the Court's decision to deny reconsideration, it is unnecessary to resolve these alternative arguments.  It should be noted, however, that the Second Circuit recently considered a Commerce Clause challenge to SORNA based (like Gundy's challenge) on the Supreme Court's decision in the Affordable Care Act case, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012) ("*NFIB*").  The Second Circuit declined to revisit a prior decision upholding SORNA under the Commerce Clause, "not because [the defendant's] arguments all lack force, nor because the constitutionality of SORNA—particularly when applied within the states—is beyond question . . . , but because the constitutionality of SORNA *as applied to [the defendant]*" remains unaffected by any limitations on Congress's Commerce Clause power that may be found in *NFIB*." *United States v. Robbins*, 2013 WL 4711394, at *1 (2d Cir. Sept. 3, 2013) (emphasis in original).  Applying the distinction between regulation of "activity" and "inactivity" from *NFIB*,[4] the Second Circuit in *Robbins* concluded that, as applied to the defendant in that case, SORNA regulated "activity"—"his change of residence and travel across state lines"—and that such activity "directly employ[ed] the channels of interstate commerce." *Id.* at *4.

      This case presents closer questions under that analysis.  In particular, is it fair to say that Gundy "traveled across state lines" for purposes of this criminal statute and the Commerce Clause given that he was *in custody* when he did so?  And in light of his custodial status, was he

---

[4] The *Robbins* court noted that it is unclear whether the discussion of the Commerce Clause in Chief Justice Roberts' primary opinion in *NFIB* constitutes "more than dicta," *id.* at *4, but assumed for the sake of the argument that the statements about the Commerce Clause in that opinion—including the significance of the activity-inactivity distinction—constitute a holding of the Court when joined with the consistent views of the four dissenting Justices, *id.*

"employ[ing] the channels of interstate commerce" in doing so? As noted, it is unnecessary to resolve those questions here. To the extent that these questions present serious constitutional issues, however, the doctrine of constitutional avoidance provides yet another basis for this Court's interpretation of the statute as applied to this case. *See Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346 (Brandeis, J., concurring).

### III. Conclusion

For the foregoing reasons, the Government's motion for reconsideration is DENIED.

SO ORDERED.

Dated: New York, New York
September 11, 2013

_____
J. PAUL OETKEN
United States District Judge